**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FREDDIE McNEILL JR.,** | : | **CASE  NO.  02 CV 1645** |
| | : | |
| Petitioner, | : | |
| | : | **JUDGE LESLEY WELLS** |
| vs. | : | |
| | : | |
| **MARGARET BAGLEY, Warden,** | : | |
| | : | **MEMORANDUM OF OPINION** |
| Respondent. | : | **AND ORDER** |

Before the Court is Petitioner Freddie McNeill Jr.'s Motion to Hold Petition for Writ of Habeas Corpus in Abeyance Pending Exhaustion of Newly Discovered Evidence Being Presented to State Court.  (ECF No. 96.)  Respondent Margaret Bagley ("Respondent") filed a Memorandum in Opposition to Mr. McNeill's motion.  (ECF No. 97.)  Mr. McNeill then filed a reply.  (ECF No. 98.)   For the following reasons, the Court grants Mr. McNeill's motion.

**I.     Relevant Background**

A jury convicted Mr. McNeill of the aggravated murder of Blake Fulton on April 14, 1995, and sentenced him to death.  The Ninth District Court of Appeals and the Ohio Supreme Court affirmed the conviction and sentence.  *State v. McNeill*, No. 95CA006158, 1997 WL 177635 (Ohio Ct. App. Apr. 1, 1997); *State v. McNeill*, 83 Ohio St. 3d 438, 700

N.E.2d 596 (Ohio 1998).

On September 20, 1996, Mr. McNeill filed a post-conviction Petition to Vacate or Set Aside Judgment and/or Sentence Pursuant to Ohio Revised Code Ann. Section 2953.21 in the trial court. (App. to Return of Writ, vol. 6, 4.) His claims included allegations that the prosecution had violated his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing a police report with information regarding Robert Rushinsky, a state witness who was seated next to Mr. Fulton when he was killed. The report noted that Mr. Rushinsky had failed to identify Mr. McNeill from a photographic line-up on the night of the shooting, which contradicted Mr. Rushinsky's trial testimony. (*Id.* at 26-29; Ex. 12.)

The trial court denied Mr. McNeill's petition. (*Id.*, vol. 7, 154-58.) It rejected his *Brady* claim on the ground that the prosecution had no obligation to produce the police report at issue, and, further, that the report summarized a taped conversation that the defendant was provided and upon which Mr. Rushinsky was cross-examined. (*Id.* at 155.) The court of appeals affirmed the trial court's ruling on Mr. McNeill's petition. Regarding the *Brady* claim, it stated, "none of his evidence even suggested that the state did anything improper. Moreover, [Mr. McNeill] failed to demonstrate that he could not have raised this issue at trial or on appeal." *State v. McNeill*, 137 Ohio App. 3d 34, 41, 738 N.E.2d 23, 28 (Ohio Ct. App. 2000). The Ohio Supreme Court declined jurisdiction to hear Mr. McNeill's post-conviction appeal. *State v. McNeill*, 89 Ohio St. 3d 1453, 731 N.E.2d 1140 (Ohio 2000).

Mr. McNeill instituted this habeas action on August 21, 2002. (ECF No. 1.) His

2

petition asserts 26 claims, including a *Brady* claim regarding Mr. Rushinsky's failure to identify Mr. McNeill from a photo array. (ECF No. 21, 22; ECF No. 50, 54-56.)

On April 15, 2005, Mr. McNeill filed a motion for discovery and evidentiary hearing on, among other things, his *Brady* claim arising from Mr. Rushinsky's failure to identify Mr. McNeill. (ECF No. 51.) This Court denied that particular request on the ground that it was unnecessary because Mr. McNeill already had obtained the Lorain County Police Department's ("LCPD") complete file on his case during his post-conviction proceedings, and his request for more police records was based only on speculation. (ECF No. 57, 9-10.)

Mr. McNeill renewed his request for discovery and/or an evidentiary hearing a year later, on April 14, 2006, regarding several claims, including his *Brady* claim. He explained that his request for additional police records was not speculative, because although the LCPD had informed him that it had given him its entire record on his case, his counsel had discovered additional police records through other means that had never been disclosed to them. (ECF No. 68, 16-19.) This Court found this a "sufficient basis to suspect that the LCPD previously ha[d] not provided him with the complete file," and granted his request to conduct a records deposition of the LCPD records custodian. (ECF No. 80, 7-8.)

In response to the Court's order, the LCPD produced eight audio tapes that Mr. McNeill claims were not made available to his trial counsel. (ECF No. 82.) One of the tapes records an interview with Mr. Rushinsky that Mr. McNeill claims demonstrates a second instance of Mr. Rushinsky's failure to identify him. Another tape contains an interview with Marco Roseborough, who possibly could have provided an alibi for Mr.

3

McNeill. Although trial counsel had filed a notice of alibi, Mr. Roseborough indicated in the taped interview that he had not spoken to them. Based on this evidence, Mr. McNeill requested the services of an investigator to support his *Brady* claims. (ECF No. 87, 6.) The Court granted this request on June 8, 2009. (ECF No. 90.)

Mr. McNeill filed a motion for a new trial with the Lorain County Court of Common Pleas on September 23, 2011, asserting the *Brady* claims involving Mr. Rushinsky and Mr. Roseborough as support. (ECF No. 96-1.)

Mr. McNeill filed the motion at issue here on February 10, 2012, asking the Court to stay his habeas action and hold it in abeyance pending the exhaustion of his *Brady* claims based upon the newly discovered evidence. (ECF No. 96.)

**II.  Applicable Law**

Although a habeas petitioner's failure to exhaust a claim does not deprive a district court of jurisdiction, a claim must be exhausted for the district court to address it on the merits. 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Harris v. Lafler*, 553 F.3d 1028, 1031 (6th Cir. 2009). Exhaustion is fulfilled once a state supreme court provides a convicted defendant an opportunity to review his or her claims on the merits. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

Moreover, a federal court may not grant a writ if the petition contains both exhausted and unexhausted claims. *Rose*, 455 U.S. at 522. Thus, "each claim must be reviewed for exhaustion before any claim may be reviewed on the merits." *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. 2009). Where a habeas petition contains unexhausted claims, there is a "strong presumption" in favor of requiring a petitioner to pursue his

available state remedies. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). *See also O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996) (stating that "the Supreme Court has been quite clear that exhaustion is the preferred avenue and that exceptions are to be for narrow purposes only").

The Sixth Circuit has explained that when a district court is presented with a habeas petition containing unexhausted claims, the court has four avenues to proceed: (1) dismiss the petition entirely, (2) hold the case in abeyance while the petitioner exhausts all of his claims in state court, (3) permit the petitioner to voluntarily dismiss the unexhausted claims, or (4) deny the petition on its merits. *Id.* at 419.

Inherent in a federal court's ability to hear a case is its ability to stay a case and hold it in abeyance. *Rhines v. Weber*, 544 U.S. 269, 276 (2005). In *Rhines v. Weber*, the United States Supreme Court provided guidance to habeas courts regarding when it is appropriate to stay a case pending a petitioner's return to state court. The *Rhines* Court cautioned that stay and abeyance, if used too often, would frustrate the "twin purposes" of reducing delay and encouraging petitioners to exhaust claims fully in state court prior to filing a federal habeas petition. *Id.* at 276-77. Accordingly, the Court held that habeas courts should grant a petitioner's motion to stay the federal habeas case for exhaustion only if that court determines "there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. Additionally, the district court must find that the unexhausted claims are not "plainly meritless." *Id.*

To avoid a habeas petitioner's use of a stay as a delay tactic, the *Rhines* Court advised that district courts place "reasonable time limits on a petitioner's trip to state court

and back." *Id*. at 278; *see also Woodson v. Smith*, No. 5:08 CV 2779, 2010 WL 3781579, at *2 (N.D. Ohio Sept. 23, 2010) (Pearson, J.) ("A mixed petition should not be stayed indefinitely, but instead the court should explicitly condition the stay on the prisoner's pursuit of state court remedies with a brief interval in the federal proceedings.").

**III. Analysis**

To satisfy the *Rhines* standard, therefore, Mr. McNeill must demonstrate both that there is good cause for his failure to exhaust his claims in state court, and that his claims are not plainly meritless. The Court will examine Mr. McNeill's claims based on the Rushinsky and Roseborough tapes individually.

**A. Rushinsky Tape**

As a preliminary matter, Respondent argues that Mr. McNeill already has exhausted his *Brady* claim based on the audiotape containing Mr. Rushinsky's failure to identify Mr. McNeill in the photo array when he pursued it through his 1996 post-conviction proceedings. She notes that the police report referencing Mr. Rushinsky's initial failure to identify Mr. McNeill and the existence of a taped statement of Mr. Rushinsky was attached as an exhibit to Mr. McNeill's petition. (ECF No. 97, 3-4.)

Mr. McNeill, on the other hand, contends that although his trial counsel were aware of the police report describing Mr. Rushinsky's failure to identify Mr. McNeill, including the reference to the taped statement of Mr. Rushinsky, they were not aware of the *second* taped statement of Mr. Rushinsky recording his failure to identify Mr. McNeill. (ECF No. 98, 3; ECF No. 96-1.) Mr. McNeill asserts that the discovery of the second tape "fundamentally alters" and strengthens his original *Brady* claim. First, the prosecution was

6

not obligated to produce the police report to Mr. McNeill's trial counsel, but had a clear obligation to produce the taped statement. The tape also is much stronger evidence than the police report, since, unlike the report, it could have been used at trial to impeach witnesses. Finally, he argues that the tape's suppression also supports a new claim under *Napue v. Illinois*, which occurs "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). (ECF No. 98, 3-4.)

For the reasons Mr. McNeill cited, the Court finds that Mr. McNeill's *Brady* and *Napue* claims based on the discovery of the second taped interview of Mr. Rushinsky in which he fails to identify Mr. McNeill have not been exhausted. Moreover, the Court finds that Mr. McNeill has demonstrated good cause for failing to exhaust the claim in state court and that the claims are not plainly meritless.

As described above, Mr. McNeill has diligently sought information from the State concerning his case since before 1996, when he initiated his post-conviction proceedings. His counsel only obtained the second Rushinsky tape after this Court ordered discovery in 2006. Mr. McNeill then filed a motion for a new trial asserting the new claims in state court within a reasonable period of time.

Moreover, Mr. McNeill's *Brady* and new *Napue* claims are not "plainly meritless." In order to establish a *Brady* violation, a petitioner must satisfy the following three requirements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v.*

7

*Greene,* 527 U.S. 263, 281-82 (1999). A related *Napue* violation occurs through "[t]he knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). In order to establish a *Napue* violation, a petitioner must show that the statement was actually false; the statement was material; and the prosecution knew it was false. *Id*.

Here, with regard to Mr. McNeill's *Brady* claim, Mr. McNeill's trial counsel, Joseph Grunda, states in an affidavit that the information regarding Mr. Rushinsky's failure to identify Mr. McNeill was not disclosed to him at trial and such information could have been used to impeach Mr. Rushinsky, who was the State's only adult witness to the murder. (ECF. No. 96-1, Ex. B.) Further, it is conceivable that a court would find this information material and that the prosecution's suppression of this information, particularly since it is now evidenced by a tape recording, may have prejudiced Mr. McNeill.

As to Mr. McNeill's *Napue* claim, he contends that the prosecution asked Mr. Rushinsky to identify Mr. McNeill in court during the trial, while avoiding any testimony concerning out-of-court identification. After their direct examination of Mr. Rushinsky, prosecutors falsely informed the court and Mr. McNeill's trial counsel that there was only one tape recording of Mr. Rushinsky's successful identification. The prosecutors hid a second tape recording in which Mr. Rushinsky failed to identify Mr. McNeill.

Thus, Mr. McNeill satisfies the *Rhine* standard with regard to these claims and the Court will stay his habeas case and hold the case in abeyance until he has fully exhausted

them in state court.

### B. Roseborough Tape

The Court finds, however, that McNeill's *Brady* claim based on the taped interview of Marco Roseborough is "plainly meritless" and therefore does not satisfy the *Rhines* test. To meet *Brady's* suppression requirement, the petitioner must show that the evidence was in the prosecution's exclusive control. *Cone v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998), *cert. denied*, 528 U.S. 842, 120 (1999). There is no *Brady* violation "where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source because in such cases there is really nothing for the government to disclose." *Cone,* 161 F.3d at 344 (internal quotation marks and citations omitted). "The prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675 (1985 ) (footnotes omitted).

Here, Mr. McNeill claims that the prosecution suppressed a taped interview of Mr. Roseborough that supported Mr. McNeill's alibi. Mr. McNeill, however, knew at trial that Mr. Roseborough had information relevant to his alibi defense. Indeed, he filed a notice of alibi with the trial court, "propos[ing] to offer testimony that he was with Mark Rosoboro [*sic*], in Wilkes Villa, in Elyria, Ohio." (ECF No. 97, Ex.) Further, Mr. Roseborough was listed as a defense witness, not a state witness. Thus, Mr. McNeill could have obtained any information he sought to support his alibi from Mr. Roseborough himself, and the prosecution was under no obligation to provide information about Mr. Roseborough to him.

**IV.    Conclusion**

Having found that the Mr. McNeill's *Brady* and *Napue* claims based on the State's suppression of the Rushinsky tape meet the *Rhines* standard, a stay is appropriate regardless of whether pursuing his other *Brady* claim, based on the Roseborough tape, may, in the end, be futile.  Accordingly, the Court grants Petitioner's Motion to Hold Petition for Writ of Habeas Corpus in Abeyance Pending Exhaustion of Newly Discovered Evidence Being Presented to State Court.  As the *Rhines* Court advised, to ensure that no unnecessary delay occurs, the Court grants the stay on the condition that Mr. McNeill seeks reinstatement to this Court's active docket within thirty (30) days of fully exhausting his state-court remedies.

IT IS SO ORDERED.

    Lesley Wells
UNITED STATES DISTRICT JUDGE

Date:  30 July 2012