**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FREDDIE McNEILL, JR.,** | ) | **CASE  NO.  1:02 CV 1645** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE DAN AARON POLSTER** |
| **vs.** | ) | |
| | ) | |
| **MARGARET BAGLEY, Warden,** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **Respondent.** | ) | **AND ORDER** |

Petitioner Freddie McNeill, Jr., has filed in this capital habeas corpus case a

Motion to Expand the Record (Doc. 119) and Motion to Amend Habeas Petition (Doc.

120).[1]  McNeill seeks to amend his petition by supplementing his existing claim under

*Brady v. Maryland*, 373 U.S. 83 (1963), which prohibits a State's suppression of

exculpatory and impeachment evidence, and adding a new claim under *Napue v. Illinois*,

360 U.S. 264 (1959), which forbids a State's knowing use of false testimony.  (Doc. 120 at

1.)  McNeill also moves to expand the record to include evidence supporting those claims.

(Doc. 119 at 1.)  Respondent Warden Margaret Bagley opposes both motions (Docs. 121,

---

[1] This case was transferred to the undersigned on July 20, 2017, from United States District Judge Lesley Wells upon her retirement.

125), to which McNeill has replied (Docs. 123, 127).  For the following reasons, the Court

grants McNeill's motions.


## RELEVANT BACKGROUND

McNeill's efforts to develop the *Brady* and *Napue* claims underlying the motions at

issue here began twenty-two years ago – and a year after McNeill's murder trial – when his

post-conviction counsel discovered a police report about his case in the court files of

another lawsuit.  Below is an account of the claims' long and complex procedural history.

### A.    McNeill's Trial

McNeill was convicted and sentenced to death in an Ohio court in 1995 for the

aggravated murder of Blake Fulton.  The jury found that McNeill shot Fulton after

attempting to rob him during a drug transaction.  *See State v. McNeill*, 83 Ohio St. 3d 438,

438-39 (Ohio 1998) (summarizing the facts underlying McNeill's conviction).[4]

The State's key witness at trial was Robert Rushinsky.  Rushinsky testified that on

the evening of the murder, he and Fulton were driving around Lorain looking for crack

cocaine to buy, when they came across McNeill, who offered to sell them some.  (Doc.

117-4 (Tr. T.) at 58-61.)  McNeill joined them and they drove off.  (*Id*. at 62.)  McNeill

then pointed a gun at them, Rushinsky attested, and demanded they give him money.  (*Id*.)

But Fulton refused and Rushinsky had none.  (*Id*. at 63-64.)  Rushinsky testified that a

heated argument between Fulton and McNeill ensued, culminating in McNeill shooting

---

[4] McNeill's conviction and sentence were affirmed by state courts on direct appeal.
*State v. McNeill*, No. 95CA006158, 1997 WL 177635 (Ohio Ct. App. Apr. 1, 1997);
*McNeill*, 83 Ohio St. 3d at 440.

Fulton point-blank in the head with Rushinsky sitting next to him.  (*Id*. at 65-66.)

Rushinsky was the sole adult witness to the crime (four young children playing nearby also

saw the shooting).  *McNeill*, 83 Ohio St. 3d at 439.

Rushinsky identified McNeill in court.  (Doc. 117-4 (Tr. T.) at 61.)  After his direct

examination, in accordance with then-existing Ohio Criminal Procedure Rule 16(B)(1)(g),

defense counsel requested an in camera inspection of any "written or recorded statement"

from Rushinsky in the State's possession to determine if any inconsistencies existed

between his testimony and the prior statement.[5]  (*Id*. at 68.)  The prosecutor informed the

court and defense counsel that the State "ha[d] a taped statement" from Rushinsky taken

the night of the murder.  (*Id*. at 68, 71.)  The trial court conducted an in camera hearing

regarding the audiotape, which the parties agreed did not need to be transcribed or placed

into evidence.  (Doc. 117-4 at 70-71.)  The transcript of the hearing notes that a "portion"

of the tape was first played, then the "tape was played in its entirety."  (*Id*. at 71.)

Afterward, defense counsel identified several inconsistencies between Rushinsky's

testimony and the recorded statement.  (*Id*. at 72-73.)  The judge ruled that the

inconsistencies were sufficient to allow the defense to cross-examine Rushinsky on the

statement if it wished.  (*Id*. at 73-74.)  Defense counsel's subsequent cross-examination of

Rushinsky included several questions about the recorded statement and its inconsistencies

with his testimony.  (*See, e.g., id*. at 77, 84-85.)  He did not challenge the witness's in-court

identification of McNeill.

**B.      State Post-Conviction Proceedings**

_____

[5] Ohio R. Crim. P. 16(B)(1)(g) has since been amended.  *See* Ohio R. Crim. P.
16(B).

3

About a year after McNeill's trial, in August 1996, McNeill's post-conviction counsel sent a public records request to the Lorain County Police Department ("LCPD") seeking all records it possessed relating to McNeill and the Fulton murder case.  (Doc. 119 at 3; *see also* Doc. 116-3 at 140, 530-31 (Ex. 15).)  McNeill states that in response, the department turned over "some records" to counsel and represented that it had produced all responsive documents.  (Doc. 119 at 3; *see also* Doc. 116-3 at 565 (Ex. 17).)

McNeill explains that post-conviction counsel also examined the state-court record of a claim against the State of Ohio brought by Fulton's family for reparations.  (Doc. 119 at 3-4; *see also* Doc. 68 at 17.)  In it, they found a police report summarizing a police interview of Rushinsky the night of the shooting, which had not been "disclosed to McNeill or his counsel at any time."  (Doc. 119 at 3; Doc. 116-3 at 139, 527 (Ex. 12 (police report)).)

Soon after, in September 1996, McNeill filed a post-conviction petition in the state trial court, asserting, among other things, a *Brady* claim based on the police report about the Rushinsky interview, which he asserted was never disclosed to defense counsel at trial but was critical to his defense.  (Doc. 116-3 at 137-39.)  Most significantly, the report stated that Rushinsky failed to identify McNeill from an initial photo array, although he positively identified him later in the interview from a second photo line-up.  (*Id*. at 527 (Ex. 12).)  McNeill argued defense counsel could have used this to undermine Rushinsky's in-court identification of him.  (*Id*. at 138.)  The report also included statements Rushinsky made during the interview that McNeill claimed were inconsistent with his trial testimony – such as the color of the gun used,  his and Fulton's drug use the night of the murder, and

the nature of his relationship with McNeill – and could have been used to further impeach Rushinsky's credibility.  (*Id*.)  McNeill requested discovery on the claim.  (*Id*. at 139.)

McNeill also asserted a claim in his post-conviction petition that the State violated his due process rights when it "interfered with [his] attempt to investigate and prepare" his petition, including his *Brady* claim.  (*Id*. at 139-40.)  He again requested more discovery. (*Id*.)

The trial court denied McNeill's petition and request for discovery and evidentiary hearing in January 1998.  (Doc. 116-4 at 155-62.)  It rejected his *Brady* claim on the grounds that a police report is not a "statement" that had to be disclosed under Rule 16(B)(1)(g), and further, prosecutors played for defense counsel at trial a tape recording the Rushinsky statement summarized in the report, as required by that rule.  (*Id*. at 156.)  The court of appeals affirmed the trial court's judgment denying McNeill's *Brady* claim in March 2000.  *State v. McNeill*, 137 Ohio App. 3d 34, 41 (Ohio Ct. App. 2000).[6]  It found "none of [McNeill's new] evidence even suggested that the state did anything improper[,] and "he failed to demonstrate that he could not have raised this issue at trial or on appeal." *Id*.  The Ohio Supreme Court declined jurisdiction over McNeill's appeal of the appellate court's judgment.  *State v. McNeill*, 89 Ohio St. 3d 1453 (Ohio 2000).

### C.     Federal Habeas Corpus Proceedings

In December 2002, McNeill filed in this Court a petition for writ of habeas corpus.

---

[6] The appellate court reversed the trial court's judgment on two of McNeill's claims of ineffective assistance of counsel, because those claims were not facially baseless and required a review of the record, but the trial court ruled on them while the trial record remained in the Ohio Supreme Court's possession in connection with McNeill's direct appeal.  *McNeill*, 137 Ohio App. 3d at 42-43.

5

(Doc. 21.)  His petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254.  As his seventh ground for relief, he asserts the State violated his constitutional rights under *Brady* by failing to disclose, among other things, the police report on the Rushinsky interview, which noted Rushinsky's failure to identify McNeill from a photo line-up the evening of the shooting and Rushinksy's statements that contradicted his trial testimony about the color of the gun, his and Fulton's drug use the night of the murder, and his relationship with McNeill.  (Doc. 21-1 at 22-23.)

In April 2005, McNeill filed a motion for discovery and evidentiary hearing, requesting, among other things, a deposition of the LCPD records custodian to determine if the department had disclosed all records he had previously requested.  (Doc. 51 at 18-19.)  This Court denied that request on the ground that it was unnecessary, because McNeill already had obtained the LCPD's complete file on his case during his state post-conviction proceedings and did not demonstrate good cause for further discovery other than "mere suspicion."  (Doc. 57 at 9-10.)

McNeill renewed his discovery motion a year later, in April 2006, including his request for the LCPD records deposition.  (Doc. 68 at 16-18.)  This time, he was more specific in explaining why his request was justified, including the circumstances surrounding his prior requests of the LCPD and his discovery of the police report of the Rushinsky interview.  (*Id*. at 17.)  The Court found McNeill's explanation sufficient cause to suspect the LCPD had not provided him with its complete case file and granted his request to conduct the LCPD records deposition.  (Doc. 80 at 7-8.)

In March 2008, McNeill's counsel advised the Court in a "Status Report Regarding

6

Discovery" that the LCPD had produced its file on the Fulton murder.  (Doc. 82 at 1.)
However, they explained, when counsel went to the LCPD to compare the produced
documents to the original records, they discovered eight audiotapes in the file that were not
previously produced.  (*Id.*)  McNeill's counsel stated that the department "thereafter
provided the undersigned counsel with copies of said tapes," and they were "reviewing
them with . . . McNeill."[7]  (*Id.*)  Counsel further advised that they had told Respondent
about the tapes and promised to provide her with copies.  (*Id.*)

In December of that year, McNeill filed a motion with this Court requesting funds
to employ an investigator to further develop his *Brady* claims.  (Doc. 87.)  He explained
that two of the audiotapes discovered in the LCPD file were not disclosed to his trial
counsel.  One of those tapes, he stated, recorded a police interview with Rushinsky in
which he failed to identify McNeill, possibly for the second time.  (*Id*. at 6.)  The other tape
contained an interview with Marco Roseboro (also spelled Roseborough), which McNeill
argued may have provided an alibi and/or established ineffective assistance of counsel in
failing to investigate an alibi.  (*Id*.)  The Court granted this request in June 2009.  (Doc.
90.)

> ### D.     McNeill's State-Court Motion for a New Trial and Motion to Stay
> ### Federal Habeas Proceedings and Hold in Abeyance

In September 2011, McNeill filed with the state trial court a motion for leave to file
a motion for a new trial raising his *Brady* claims based on the police report of the

---

[7] The status report's clear language contradicts McNeill's assertion in his reply
brief that "the entire basis of the status report was to alert this Court to the fact that eight
months after being served with a federal subpoena, the State had still not turned over the
eight cassette tapes now at issue."  (Doc. 127 at 11.)

Rushinsky interview and the Rushinsky and Roseboro audiotapes.  (Doc. 96-1.)  In it, he

argued that if prosecutors had disclosed to defense counsel the newly discovered second

tape and police report showing Rushinsky failed to identify McNeill from a photo array,

they could have used it to cross-examine Rushinsky and undermine his identification of

him.  (*Id*.)  And the audiotape of the Roseboro interview, he asserted, would have

supported his alibi at trial.  (*Id*.)  McNeill also claimed the suppressed evidence

demonstrated that the prosecution violated his due process rights under *Napue* by allowing

Rushinsky to falsely identify him at trial.  (*Id*. at 8.)

McNeill attached as support for his motion an affidavit of his trial counsel, Joseph

Grunda.  (Doc. 96-1 at 12 (Ex. B).)  Grunda averred that the State never informed him that

Rushinsky had failed to identify McNeill, and if he had been so advised, he would have

"vigorously cross-examined him on that point."  (*Id*.)  He further stated that the taped

interview of Rushinsky that the State provided at trial "ma[de] no mention of the fact that

he was unable to identify anyone from a photo array[,] [n]or was [he] ever advised that in

fact there were two taped interviews of Mr. Rushinsky."  (*Id*.)  And he attested that the

State never told him about the taped Roseboro interview either.  (*Id*.)

McNeill did not submit to the state court copies of the audiotapes as exhibits to his

motion.  Instead, he informed the court in his motion that "[t]he original of the audio tape is

currently in possession of the State but a defense copy can be provided at hearing hereof by

the defense."  (*Id*. at 5.)  This proffer is consistent with Rule 33(A)(6) of the Ohio Rule of

Criminal Procedure, which provides that "[w]hen a motion for a new trial is made upon the

ground of newly discovered evidence, the defendant must produce at the hearing on the

motion, in support thereof, the affidavits of the witnesses by whom such evidence is

8

expected to be given."  Ohio R. Crim. P. 33(A)(6).

In February 2012, McNeill filed a motion asking this Court to stay his habeas action and hold it in abeyance pending the exhaustion of the *Brady* and *Napue* claims raised in his state-court motion for a new trial.  (Doc. 96.)  The Court granted the motion.  (Doc. 99.)  It found McNeill established good cause for his failure to exhaust his claims in state court, as he had diligently sought information regarding these claims since 1996 and only obtained the audiotapes in 2008 after this Court ordered discovery, and the claims based on the Rushinsky tape were not plainly meritless.[8]  (*Id*. at 6-9.)

The state courts denied McNeill's motion for leave to file a motion for a new trial. The trial court first found the motion untimely, as McNeill did not adequately explain the reason for his delay in seeking the new trial.  (Doc. 118-1 at 229-30.)  It then concluded that, in any event, the new evidence did not establish a "strong probability that it would change the result in a new trial."  (*Id*. at 232.)  It reasoned:

> The trial transcript herein is replete with numerous witnesses identifying the Defendant as the shooter as well as other testimony regarding him threatening his ex-girlfriend earlier in the day with a gun matching the description of the gun used in the murder.  Specifically, Robert Rushinsky identified the Defendant in Court, indicated he had prior involvement with Defendant, that he knew where the Defendant lived from that prior involvement, and that the murder occurred in front of Defendant's house. Trial Transcript volume III at pp. 584-591, 607-609, 623-625. Further, four children who witnessed the incident all testified and identified the Defendant as the one involved in the shooting.  *Id*. at pp. 687-779. Some of the children were cross examined regarding their inability to identify Defendant in a photo lineup.  *Id*. at pp. 743-745, 752.  The jury was obviously not persuaded that the failure to identify in

---

[8] The Court found, for purposes of the motion to stay, that McNeill's *Brady* claim based on the Roseboro tape was plainly meritless, because McNeill knew at trial that Roseboro, a defense witness, had information relevant to his alibi defense and he could have obtained any information he sought to support his alibi from Roseboro himself.  (Doc. 99 at 9.)

9

a photo lineup ultimately made these witnesses unable to identify the Defendant.

(*Id*. at 231-32.)

McNeill appealed the trial court's judgment.  He argued that the trial court violated his due process rights when it *sua sponte* dismissed his motion without notifying all parties. (Doc. 118-1 at 285.)  He requested an evidentiary hearing, or at a minim, a "remand for additional proceedings" to permit him "to respond and be heard on the trial court's diligence finding . . . ."  (*Id*. at 298.)  The state appellate court affirmed the trial court's decision, agreeing with McNeill that the State "did not challenge [his] request" on the basis of diligence, but holding that parties must respond to all potential arguments and McNeill did not adequately explain the cause of his delay in bringing the motion.  (*Id*. at 361-62.) The Ohio Supreme Court declined jurisdiction over McNeill's appeal of that ruling.  (*Id*. at 458, 467.)

Having exhausted his new *Brady* and *Napue* claims in state court, McNeill moved to reinstate his case on this Court's docket in August 2017.  (Doc. 107.)

###    E.    McNeill's Motion to Amend his Habeas Petition and Expand the Record

McNeill now has filed a Motion to Amend Habeas Petition (Doc. 120) and Motion to Expand the Record (Doc. 119).  He seeks to supplement his *Brady* claim and add a new claim under *Napue.*  (Doc. 120 at 1.)  McNeill also moves to expand the record to include evidence that supports those claims.  (Doc. 119 at 1.)

McNeill's proposed supplements to his *Brady* claim are based on the three newly discovered audiotapes.  The first tape is of the Rushinsky interview the night of the murder with the failed identification of McNeill.  (Doc. 120 at 4; Doc. 120-1.)  However, McNeill

explains that it now appears Rushinsky's failure to identify McNeill in the photo array was not documented in a second tape as previously thought, but was part of the same interview recorded on the same tape prosecutors played at trial at the in camera hearing.  (*Id*. at 4 at n.1.)  He now contends

> the prosecutor withheld critical portions of the audio taped interview where Rushinsky could not identify McNeill when he was shown an array of Polaroid photographs including McNeill. After a lengthy break in the interview where Rushinsky expresses his concerns about going to jail, the detectives returned to the interview room and showed Rushinsky photos including McNeill's. Only then did Rushinsky identify McNeill as the shooter from his photo. The first portion of the taped interview was never played for [the] defense or the Court.

(Doc. 120-2 at 1-2 (footnote omitted).)  The second tape, McNeill alleges, is of a later, separate interview of Rushinsky, in which a detective corrects his description of the hat McNeill allegedly was wearing at the time of the offense.  (Doc. 120 at 4, 7.)  And the third tape recorded the Roseboro interview, which he argues supports his alibi.  (*Id*.)  McNeill claims the tapes bolster his *Brady* claim that the prosecution failed to disclose material evidence that defense counsel could have used to impeach the testimony of the State's key witness, Rushinsky, and undermine his in-court identification of McNeill.  (*Id*. at 6-7.)

In addition, McNeill seeks to add a related *Napue* claim based on the prosecution creating a materially false impression regarding Rushinsky's credibility.  (*Id*. at 7; Doc. 120-2.)  He alleges the prosecutors failed to play the complete tape of the Rushinsky interview, which included his initial failure to identify McNeill, and never disclosed the second Rushinsky interview to defense counsel at trial at all.  (*Id*.)

Respondent opposes both motions.  (Docs. 121, 125.)

11

**D**ISCUSSION

### A.     Motion to Amend

Federal Civil Rule 15 allows a habeas petitioner to amend or supplement a petition

once as a matter of course within twenty-one days after serving it.  Fed. R. Civ. P.

15(a)(1)(B); *see also* 28 U.S.C. § 2242 (habeas actions "may be amended or supplemented

as provided in the rules of procedure applicable to civil actions"); Fed. R. Civ. P. 81(a)(4)

(federal civil rules "apply to proceedings for habeas corpus"); R. Governing Section 2254

Cases 12 (federal civil rules apply in habeas cases "to the extent that they are not

inconsistent with any statutory provisions or [the habeas] rules").  Here, that time expired

more than fifteen years ago.  (*See* Doc. 21.)

Rule 15 permits amendment after that initial time period only with the opposing

party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  It instructs courts to

"freely give leave when justice so requires."  (*Id*.)  In determining whether to grant leave to

amend, courts should consider "'[u]ndue delay in filing, lack of notice to the opposing

party, bad faith by the moving party, repeated failure to cure deficiencies by previous

amendments, undue prejudice to the opposing party, and futility of amendment . . . .'"  *Coe*

*v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th

Cir. 1994)).  "Delay by itself is not sufficient reason to deny a motion to amend[,]" while

"[n]otice and substantial prejudice to the opposing party are critical factors in determining

whether an amendment should be granted."  *Id*. at 341-42 (quoting *Brooks*, 39 F.3d at 130).

Federal habeas corpus actions, however, also are subject to a one-year statute of

limitations.  28 U.S.C. § 2244(d)(1).  A motion to amend a habeas petition, therefore, "will

be denied where it is filed after that period expires unless the proposed amendment relates

12

back to the date of the original pleading within the meaning of [Rule 15(c)]." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008).  Rule 15(c)(1)(B) permits relation-back of a proposed amendment to a habeas petition when both the pleading and the proposed amendment arise out of the same "conduct, transaction, or occurrence."  Fed. R. Civ. P. 15(c)(1)(B).  A proposed amendment may relate back to a timely petition "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts."  *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  A claim will not relate back, however, to the extent that it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Id.* at 650.

Respondent opposes McNeill's proposed amendments on the grounds that the new claims:  (1) do not relate back to his original petition; and (2) are futile, as they are procedurally defaulted and plainly meritless.  (*See* Doc. 125 at 3.)

### 1.    Relation back

*Brady claim based on Rushinsky tapes*.  Despite his general challenge to the relation back of McNeill's proposed amendments, Respondent concedes that McNeill's proposed amendments to his *Brady* claim based on the Rushinsky tapes "may not run afoul of the statute of limitations" and "arguably relate[] back to the original petition."  (*Id*. at 5.)

Relation back is permitted "when a motion to amend under Rule 15(c) expands on the facts supporting a claim in the original petition."  *Hill v. Mitchell*, 842 F.3d 910, 942 (6th Cir. 2016) (citing *Cowan v. Stovall*, 645 F.3d 815, 818 (6th Cir. 2011)).  McNeill's original *Brady* claim alleges that the prosecution failed to comply with its duty to disclose exculpatory and impeachment evidence when it did not disclose to the defense a police

13

report summarizing the police's interview with Rushinsky, in which he initially failed to

identify McNeill from an initial photo array and made other statements that were

inconsistent with his trial testimony – all material impeachment evidence against

Rushinsky, the State's key witness.  (Doc. 21 at 22-23.)  McNeill's proposed amendments

to that claim expand on the facts supporting it with additional evidence involving police

interviews of the same witness, but in a different format of audiotapes rather than police

reports, which if disclosed, would have provided defense counsel with powerful evidence

to attack Rushinsky's credibility on cross-examination.  (*See* Doc. 120-1 at 3-7.)  These

amendments do not assert a new claim supported by facts that differ in time and type, but

"clarif[y] or amplif[y] a claim alleged in the original petition," and therefore relate back to

McNeill's original petition.  *Hill*, 842 F.3d at 942 (citing *Woodward v. Williams*, 263 F.3d

1135, 1142 (10th Cir. 2001)).

    *Roseboro tape.*  Respondent is silent on whether McNeill's proposed amendment to

supplement his *Brady* claim with allegations based on the Roseboro tape relates back to his

original petition.  (*See* Doc. 125 at 13-14.)  But the Court agrees with McNeill that this

evidence of an additional police interview of a witness who had information supporting his

alibi relates back to his original *Brady* claim as a further allegation that the prosecution

suppressed material evidence relating to the identification of the assailant.  (*See* Doc. 120

at 9.)

    *Napue claim*.  Respondent argues that McNeill's proposed *Napue* claim does not

relate back to his original petition.  (Doc. 125 at 14-15.)  He maintains that while *Brady*

and *Napue* claims are "related," they are "separate and distinct" legal theories, in that a

*Napue* claim requires a showing of the State's intent, or knowing use of false testimony,

14

and a *Brady* claim does not.  (*Id*.)  But that is not the standard for relation back.  The Sixth

Circuit has held that "where the parties are the same, . . . an amendment which adds

another claim arising out of the same transaction or occurrence does relate back to the date

of the original complaint."  *Hageman v. Signal L.P. Gas, Inc*., 486 F.2d 479, 484 (6th Cir.

1973).

And here, the proposed *Napue* claim stems from essentially the same facts McNeill alleged

in his original *Brady* claim – namely, the prosecution's suppression of information about

Rushinsky's interview that contradicted his trial testimony in key respects, including his in-

court identification of McNeill.[9]  The Court finds, therefore, that McNeill's proposed

---

[9] Respondent also argues that "McNeill's extensive delay – more than ten years – in discovering his [*Napue*] claim and raising it in this Court proves fatal to his cause in light of the Sixth Circuit's decision in *Hill v. Mitchell*, 842 F.3d 910 (6th Cir. 2016)."  (Doc. 125 at 17.)  He states the court found Hill's delay of more than three years in raising his claim "excessive."  (*Id*.)  But Respondent mischaracterizes the court's holding, and *Hill* does not apply to McNeill's *Napue* claim.  The court held in *Hill* that the petitioner's proposed new *Brady* claim, based on an allegedly suppressed police report discovered three years before he sought amendment, did not relate back to his original *Brady* claim, because the original claim did not allege, even in general terms, any operative facts, much less facts out of which the amended claim could be deemed to have arisen.  *Hill*, 842 F.3d at 925.  The court noted the petitioner's delay in raising the claim, but only in emphasizing the importance of enforcing the AEDPA statute of limitations and limiting amendments to those that relate back to the original petition.  The court rejected the district court's decision allowing the amendment "based on equitable principles and the fact that the State *did* suppress evidence."  *Id*.  The court stated it "agree[d] that Hill had a colorable basis to suspect the State had suppressed evidence, and . . . the State 'is hardly in a position to invoke equitable principles."  *Id*.  It also recognized that Hill could not have including the new *Brady* claim in his original petition.  *Id*.  "But that is exactly why," it explained, "Hill had one year from the discovery of the new evidence" under the AEDPA statute of limitations to raise the claim.  *Id*.  The court, therefore, did not cite the petitioner's three-year delay in raising his claim to deny an otherwise proper amendment that related back; it noted the time delay because the petitioner had discovered new evidence totally unrelated to his original, overly broad *Brady* allegations, and was therefore two years late in presenting a claim based on that evidence.

*Napue* claim also relates back to his original petition.[10]

## 2.  Other considerations

*Futility*.  Respondent devotes much of his argument to the futility of McNeill's proposed amendments, because they are plainly meritless and procedurally defaulted. (Doc. 125 at 5-11.)  A proposed amendment, however, must be frivolous or legally insufficient on its face to warrant denial of leave to amend on that ground.  *See, e.g., Buder v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 644 F.2d 690, 695 (8th Cir. 1981) (a party's motion to amend should be dismissed on the merits "only if [the amendments] assert clearly frivolous claims or defenses"); *see also* 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487, at 637 (3d ed.).  The Court cannot conclude from the face of McNeill's proposed amendments that they are clearly frivolous or legally insufficient.[11]  Similarly, Respondent's defense of procedural default

---

[10] Respondent presents two additional arguments relating to the relation back of McNeill's proposed amendments that are misplaced.  First, she argues that McNeill's references in his proposed amendment to Ohio Criminal Procedure Rule 16, under which the State disclosed its Rushinsky tape to defense counsel at trial, is an attempt to add a new claim "challenging the propriety" of the rule, which is not cognizable on habeas corpus review.  (Doc. 125 at 11-12.)  As McNeill responds, however, Rule 16 is relevant only to the issue of the prosecution's suppression of the Rushinsky evidence, *see Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (*Brady* claims require showing "that evidence must have been suppressed by the State"); he does not seek to assert a new claim challenging the rule under federal constitutional law.  (Doc. 127 at 6-7.)  Second, she argues that McNeill's "allegations surrounding the police report providing a description of a suspect should not be permitted to be amended."  (Doc. 125 at 12-13.)  But McNeill raised this *Brady* claim in his original petition (*see* Doc. 21-1 at 23), and it is not at issue here.

[11] Although, as noted above, *supra* n.8, the Court found, for purposes of McNeill's stay-and-abeyance motion, that this claim lacked merit because McNeill knew at trial that Roseboro, a defense witness, had information relevant to his alibi (Doc. 99 at 9), this proposed claim is not so frivolous or legally insufficient on its face that McNeill should be denied permission to amend his petition to add it.  For instance, courts evaluate a *Brady* claim's requirement that the suppressed evidence be material to the petitioner's guilt or

16

should be raised in her answer to the amended petition, allowing McNeill the opportunity

to respond fully and the Court to consider all issues in light of the entire record.

*Prejudice*.  Respondent does not even mention, however, the most critical factors in

determining whether to grant leave to amend:  notice and substantial prejudice to the

opposing party.  *Coe*, 161 F.3d at 341.  And the Court can find no prejudice in permitting

McNeill to amend his petition as he requests.  Respondent has long been aware of

McNeill's *Brady* and *Napue* claims, and little additional work on her part should be

required to address them.

Accordingly, McNeill's motion to amend is granted.

**B.      Motion to Expand the Record**

McNeill also asks the Court to expand the record to include the Rushinsky and

Roseboro audiotapes supporting his proposed amendments.  (Doc. 119.)  Rule 7 of the

Rules Governing Section 2254 Cases confers on district courts the authority to expand the

record with "additional materials relating to the petition."  R. Governing Section 2254

Cases 7(a).  "The judge may require that these materials be authenticated."  *Id*.  According

to the advisory committee's notes on Rule 7, the purpose of the rule is not only to enable

the district court to dispose of petitions not dismissed on the pleadings without the time and

expense of an evidentiary hearing, but also to assist the district court in determining

whether an evidentiary hearing is warranted.  *Id*., advisory committee's note.  The decision

whether to order an expansion of the record under Rule 7 generally falls within the sound

discretion of the district court judge.  *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988).

---

punishment cumulatively, rather than on an item-by-item basis, making even a weaker
*Brady* allegation relevant.  *See Kyles v. Whitley,* 514 U.S. 419, 440-41 (1995).

Motions to expand the record under Rule 7 must meet the standards of AEDPA's §
2254(e)(2), although that provision is expressly directed only at evidentiary hearings.
*Holland v. Jackson,* 542 U.S. 649, 653 (2004) (per curiam) ("Those same restrictions [of §
2254(e)(2)] apply *a fortiori* when a prisoner seeks relief based on new evidence *without* an
evidentiary hearing." (emphasis original)).  Section 2254(e)(2) precludes an evidentiary
hearing "[i]f the applicant has failed to develop the factual basis of a claim in State court
proceedings" unless the applicant satisfies certain conditions.[12]  28 U.S.C. § 2254(e)(2).

Under AEDPA, therefore, a prisoner may introduce new evidence in support of a
claim in the district court "only if [the prisoner] was not at fault in failing to develop that
evidence in state court, or (if he was at fault) if the conditions prescribed in § 2254(e)(2)
were met."  *Holland*, 542 U.S. at 652-53.  A prisoner is at fault in failing to develop the
evidence if there is a "lack of diligence, or some greater fault, attributable to the prisoner or
the prisoner's counsel."  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  The required
diligence is "a reasonable attempt, in light of the information available at the time, to
investigate and pursue claims in state court."  *Id*. at 435.  "Diligence will require in the
usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the

---

[12] Those conditions are:

(A)     the claim relies on –

       (i)     a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

       (ii)     a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)     the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

18

manner prescribed by state law." *Id*. at 437.  "[C]omity is not served by saying a prisoner 'has failed to develop the factual basis of a claim' where he was unable to develop his claim in state court despite diligent effort.  In that circumstance, an evidentiary hearing is not barred by § 2254(e)(2)."  *Id*.

Without addressing § 2254(e)(2), Respondent argues the Court should not expand the record to include the audiotapes because:  (1) McNeill did not make the tapes part of the state-court record, but "purposely withheld them, assuming he would be granted an evidentiary hearing"; (2) he did not diligently pursue "his claims" in state court; and (3) this Court's consideration of the tapes "may ultimately" be precluded under *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), which limited a habeas courts' review of certain claims to the record that was before the state court that adjudicated the claim on the merits. (Doc. 121 at 2.)  McNeill replies that he was diligent in his efforts to present the audiotapes to state courts in support of his *Brady* and *Napue* claims.  (Doc. 123 at 2-8.)  He explains he offered to submit the audiotapes at an evidentiary hearing in state court in his motion for leave to file a motion for a new trial, but the courts improperly denied his motion on timeliness grounds with no evidentiary hearing.  (*Id*.)

The Court finds, as it did in connection with McNeill's stay-and-abeyance motion, that McNeill was diligent in developing this evidence in state court.  McNeill sought information regarding his *Brady* claims since 1996 and discovered the audiotapes in March 2008 only after this Court granted him discovery.  In those twelve years of repeated requests for police records, the State never voluntarily produced the tapes.  After finding the tapes, McNeill moved for, and this Court granted in June 2009, funds for an investigator to further research his *Brady* claims.  In September 2011, twenty-seven months

later, he initiated new state post-conviction proceedings, raising a *Brady* claim based on the Rushinsky and Roseboro tapes and offering to present the tapes at an evidentiary hearing in accordance with state procedural rules.

McNeill has therefore demonstrated the requisite diligence in attempting to develop the factual basis of his *Brady* and *Napue* claims and in presenting the audiotapes supporting those claims in state court, and he may introduce the Rushinsky and Roseboro audiotapes into the record without satisfying § 2254(e)(2)'s conditions.  *See Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007) ("Getsy sought to develop evidence regarding his judicial-bias claim both at trial and in his postconviction proceedings in state court. He has thus demonstrated diligence in accordance with § 2254(e)(2)."); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("In the case before us, petitioner pursued his ineffective assistance of appellate counsel claim with proper diligence, raising it first—albeit prematurely—in his petition for post-conviction relief and then in his motion for delayed reconsideration. Both of these pleadings requested an evidentiary hearing, which was never afforded by the Ohio courts. Consistent with *Williams v. Taylor*, therefore, we conclude that petitioner is not precluded from an evidentiary hearing as he exercised the necessary diligence in attempting to establish the factual record in state court."); and *Hoffner v. Bradshaw*, No. 3:05 CV 687, 2007 WL 3171631, at * 3 (N.D. Ohio Oct. 29, 2007) (Gwin, J.) ("Petitioners who request an evidentiary hearing in the appropriate state court proceedings are sufficiently diligent, even when the state court fails to grant the request.") (citing *Greer*, 264 F.3d at 681)).  McNeill's motion to expand the record is granted.

## CONCLUSION

For the reasons set forth above, the Court grants McNeill's Motion to Expand the

Record (Doc. 119) and Motion to Amend Habeas Petition (Doc. 120).  Pursuant to Rule

7(a) of the Rules Governing Section 2254 Cases, the Court orders Respondent to

authenticate the Rushinsky and Roseboro audiotapes before submitting them to this Court.

       IT IS SO ORDERED.

                                   DAN AARON POLSTER
                                   UNITED STATES DISTRICT JUDGE

July 9, 2018

21